UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMY WEST, | NO. 2:23-CV-0106-TOR |
| Plaintiff, | ORDER ON EXPERT TESTIMONY AND SUMMARY JUDGMENT |
| v. | |
| BNSF RAILWAY CO., | |
| Defendant. | |

BEFORE THE COURT are Defendant's Motion to Exclude the Testimony of Dr. Trangle and Motion for Summary Judgment (ECF Nos. 41, 35). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein, the completed briefing, and is fully informed. For the reasons discussed below, Defendant's Motion to exclude the testimony of Dr. Trangle is **denied**, and Defendant's motion for summary judgment is **granted** in part and **denied** in part.

**BACKGROUND**

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY ~ 1

This case concerns claims under the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. ECF No. 1 at 2. Plaintiff, Jeremy West ("West"), was hired by Defendant BNSF in January 2014 as a conductor and later as an engineer after receiving his engineer certification. *Id*. In 2020, West was diagnosed with a rare medical condition, Susac Syndrome, which if untreated can cause severe headaches; confusion; problems with thinking, such as short-term memory loss, slow thought processing and reduced ability to solve problems; slurred speech; walking difficulties; and/or changes in personality. *Id*. at 3. For the next year, West was treated with medication to manage his disorder. *Id*. West applied and received intermittent FMLA leave in September 2020 to attend routine appointments related to his condition. *Id*. West re-applied for FMLA leave in September 2021 to continue attending routine appointments. *Id*. West was subsequently removed from his position at BNSF September 21, 2021. ECF No. 47-3 at 4. West initiated the present action against BNSF alleging he was effectively terminated in violation of the ADA and FMLA. ECF No. 1 at 4-6.

On September 3, 2024, BNSF moved to exclude the testimony of West's expert witness, Dr. Kevin Trangle ("Dr. Trangle") and moved for summary judgment as to all of West's claims.

//

DISCUSSION

I.    <u>Dr. Trangle's Testimony</u>

Dr. Trangle is a Board Certified Occupational Medicine Director who has performed numerous fitness for duty ("FDD") examinations and determinations. ECF No. 42-1 at 16.  At West's behest, Dr. Trangle conducted a review of West's medical records and produced an Independent Medical Evaluation ("IME") report. ECF No. 42-1.  In his report, Dr. Trangle opined that BNSF "erred in its determination that Mr. West could not safely return to his job as a Conductor. Specifically, Dr. Aquino's characterization of Mr. West as having a condition which posed an unacceptable future risk of sudden incapacitation was unjustified and based on an improper FFD process . . . ." *Id.* at 15.

BNSF argues Dr. Trangle's report and proposed testimony should be excluded under Federal Rules of Evidence ("FRE") 702 because his analysis is unreliable, irrelevant, and unduly prejudicial.  ECFR No. 41 at 5.  Specifically, BNSF asserts that Dr. Trangle is not qualified to opine on risk assessments in the railroad industry and his conclusions do not rely on scientific, technical, or other specialized knowledge as required by FRE 702.  ECF No. 41 at 6.  BNSF argues Dr. Trangle's proposed testimony is unreliable because it is based on subjective belief and unsupported speculation.  *Id.* at 8.

//

*a. Relevant law*

Admission of expert witness testimony is governed by Rule 702, which

provides in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

FED. R. EVID. 702.

In evaluating whether the proffered expert testimony will facilitate the trier

of fact's understanding of the evidence or determination of a fact in issue under

Rule 702, the Court assesses both the relevance and reliability of the testimony.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-92 (1993).  "Expert

opinion testimony is relevant if the knowledge underlying it has a 'valid . . .

connection to the pertinent inquiry.'  And it is reliable if the knowledge underlying

it 'has a reliable basis in the knowledge and experience of [the relevant]

discipline.'"  *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir.

2006) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 1167, 1175 (1999)).  The

Court possesses "broad latitude" to determine the admissibility of expert

testimony, subject only to abuse of discretion review on appeal, *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 142 (1999) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S.

136, 143 (1997)).  As made clear by a recent amendment to Rule 702 in December 2023, the burden rests with the proponent of the expert testimony to demonstrate by a preponderance of the evidence that the testimony is admissible.  *See* FED. R. EVID. 702 Advisory Committee Note (2023).

*b.  Analysis*

West seeks to use Dr. Trangle's report and proposed testimony to challenge BNSF's risk assessment and subsequent finding that West presented a significant risk and needed to be removed from service.

> The determination that an individual poses a 'direct threat' shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job.  This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence.

*Eschazabal v. Chevron USA, Inc.*, 336 F.3d 1023, 1028 (9th Cir. 2003).

BNSF's chief medical officer, Dr. Theodore Aquino, ultimately made the decision to pull West from service after a conversation with West's neurologist, Dr. Craddock, and performing independent research on Susac Syndrome.  ECF No. 37-3 at 5.  Susac Syndrome is a very rare neurological condition that Dr. Aquino had admittedly not heard of prior to BNSF's diagnosis.  *Id.* at 28, 33.  Dr. Aquino based his conclusion in large part on Dr. Craddock's recommendation that BNSF should not be performing his job as a locomotive engineer.  *Id.* at 5-6, 11.  Dr. Trangle has also examined BNSF's medical records, Dr. Craddock's findings and

performed independent research on Susac Syndrome, thus his testimony is directly

relevant to West's challenge of Dr. Aquino's findings.  *See* ECF No. 42-1.

BNSF argues Dr. Trangle is not qualified to opine on this matter because he

has no relevant knowledge, skill, experience, training or education.  ECF No. 41 at

5.  The Court disagrees.  Dr. Trangle specializes in occupational medicine and has

relied on his specialized knowledge as an occupational medicine doctor in

numerous cases related to risk tolerance under the ADA fitness for duty assessment

framework.  *See e.g.*, *Baker v. Union Pac. R.R. Co.*, 580 F.Supp.3d 647 (D. Neb.

2022); *Montgomery v. Union Pac. R.R. Co.*, 2018 WL 6110930 (D. Ariz. Nov. 21,

2018); *Mills v. Union Pacific R.R. Co.*, 2024 WL 185246 (D. Idaho Jan. 16, 2024);

*Sanders v. Union Pacific R.R. Co.*, 2021 WL 4783629 (D. Neb. Oct. 7, 2021).  As

for Dr. Trangle's knowledge on Susac Syndrome itself, he appears to have a

similar level of background knowledge on the condition as Dr. Aquino given that

neither were familiar with the condition before West's diagnosis and this case.

ECF Nos. 37-2 at 48, 37-3 at 33.

BNSF argues that Dr. Trangle's testimony is unreliable because his opinion

is based on his subjective belief and is wholly speculative.  ECF No. 41 at 8.  Dr.

Aquino came to his conclusions after a discussion with Dr. Craddock and

independent research.  Somewhat similarly, Dr. Trangle came to his conclusions

after reviewing West's medical records, Dr. Aquino and West's deposition

1  transcripts, West's job requirements, and research articles.  ECF No. 42-1 at 10.

2  Dr. Trangle reviewed the underlying facts necessary to support his testimony

3  challenging Dr. Aquino's findings.  "Expert evidence of this nature . . . elucidates

4  the very issue the court must assess—whether the opinion that a direct threat

5  existed was *objectively* reasonable."  *Echazabal*, 336 F.3d at 1033.

6      For these reasons, the Court finds Dr. Trangle's testimony to be both

7  relevant to this case and reliable.  BNSF's motion to exclude Dr. Trangle as expert

8  testimony is **denied**.

9  II. <u>Summary Judgment</u>

10     BNSF moves for summary judgment as to the following claims: West's

11  claim that removing him from his position as an engineer with BNSF was in

12  violation of the ADA, West's claim that BNSF failed to provide reasonable

13  accommodation as required under the ADA, and West's claim that his termination

14  was in violation of the FMLA.  ECF No. 35 at 2.

15     The Court may grant summary judgment in favor of a moving party who

16  demonstrates "that there is no genuine dispute as to any material fact and that the

17  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

18  on a motion for summary judgment, the court must only consider admissible

19  evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

20  The party moving for summary judgment bears the initial burden of showing the

absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id.* at 248.  Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

### 1. ADA Claim

In response to West's claims that BNSF removed West from his position as an engineer in violation of the ADA, BNSF argues the direct threat affirmative defense.  An employer can defend against a disability discrimination claim under the ADA by relying on a qualification standard that "may include a requirement

that an individual shall not pose a direct threat to the health or safety of other

individuals in the workplace."  42 U.S.C. § 12111(3); *Echazabal*, 336 F.3d at

1027.  "Because it is an affirmative defense, the burden of establishing a direct

threat lies with the employer." *Echazabal*, 336 F.3d at 1027.  The ADA presents a

specific matrix in assessing the reasonableness of the employer's action:

> Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:
>
> (1) The duration of the risk;
>
> (2) The nature and severity of the potential harm;
>
> (3) The likelihood that the potential harm will occur; and
>
> (4) The imminence of the potential harm.

29 C.F.R. § 1630.2(r).

Dr. Aquino made the call to remove West from performing safety-sensitive

functions for BNSF based on a telephone call with Dr. Craddock and his own

research.  BNSF's Statement of Material Facts Not in Dispute states that "[b]ased

on Dr. Craddock's recommendation that West not perform safety-sensitive work

and Dr. Aquino's own research into Susac Syndrome, Dr. Aquino determined that

1   West was a safety risk and placed a restriction on West." ECF No. 36 at 9-10.

2   "Dr. Aquino relied heavily on his conversation with Dr. Craddock." *Id.* at 10.

3   However, West disagrees Dr. Craddock made any such recommendation and has

4   submitted a sworn declaration by Dr. Craddock that no such recommendation or

5   opinion was made during the telephone call with Dr. Aquino. ECF No. 48. BNSF

6   argues that Dr. Craddock's declaration does not create genuine dispute of material

7   fact because the undisputed fact is that Dr. Aquino relied heavily on his

8   conversation with Dr. Craddock in making his decision which the occurrence of is

9   not in dispute. ECF No. 51 at 10. Further, BNSF argues the governing standard

10  for a direct threat defense is only whether Dr. Aquino's decision was objectively a

11  reasonable medical judgment. ECF No. 50 at 3-4.

12      First, the Court is not persuaded by BNSF's attempt to skirt around its own

13  statement that Dr. Aquino relied on Dr. Craddock's recommendation in his

14  decision to pull West from his position. Dr. Aquino states in both his deposition

15  transcript (ECF No. 37-3) and his declaration in support of BNSF's motion for

16  summary judgment (ECF No. 38) that his decision to pull West from performing

17  safety-sensitive job duties was heavily based on Dr. Craddock's opinion that West

18  should not perform such duties and his own independent research on Susac

19  Syndrome. ECF Nos. 38 at 3, 37-3 at 6-7.

20

1    Second, the governing standard on a direct threat defense is whether the

2    employer performed an "individualized assessment" "based on a reasonable

3    medical judgment that relies on the most current medical knowledge and/or on the

4    best available objective evidence." 29 C.F.R. § 1630(r). "[A]nalysis of direct

5    threat 'requires the employer to gather substantial information about the

6    employee's work history and medical status, and disallows reliance on subjective

7    evaluations by the employer." *Echazabal*, 336 F.3d at 1033 (quoting *Nunes v.*

8    *Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1248 (9th Cir. 1999)).

9    West contends Dr. Aquino's conversation with Dr. Craddock and subsequent

10    research on Susac Syndrome was plainly not an individualized decision based on

11    substantial information of West's work and medical history. ECF No. 45 at 6.

12    BNSF argues Dr. Aquino's conversation with Dr. Craddock constituted an

13    individualized assessment because the discussion addressed three of the four

14    assessment factors: the duration of risk, the likelihood that the potential harm will

15    occur, and the imminence of the potential harm. ECF No. 35 at 9-10. However,

16    Dr. Craddock's declaration states that during the conversation with Dr. Aquino, the

17    likelihood of potential symptoms related to Susac Syndrome occurring for West

18    specifically was never even addressed. ECF No. 48. BNSF further argues that

19    West's medical records memorialize Dr. Craddock's communications with West

20    and confirm she agreed with Dr. Aquino's assessment to remove West from his

1    position.  ECF No. 50 at 6-7.  But even if the Court agreed with BNSF, BNSF was

2    still required to make an individualized assessment that West posed a direct threat

3    at the time of removal.  *Nunes*, 164 F.3d at 1248 ("To protect disabled individuals

4    from discrimination based on prejudice, stereotypes, or unfounded fear, the

5    Supreme Court has required an individualized direct threat inquiry that relies on

6    the best current medical or other objective evidence."); *Echazabal*, 336 F.3d at

7    1031 ("Had Chevron conducted the individualized assessment required by law, it

8    would have considered in detail the four *Arline* factors as they applied to

9    Echazabal's condition.").  BNSF's reference to medical records after the fact does

10   not alleviate this requirement, and Dr. Aquino never states that he reviewed West's

11   medical records before making his decision.  Therefore, a material issue of fact

12   exists as to whether BNSF properly conducted an individualized assessment as

13   required in a direct threat analysis.  29 C.F.R. § 1630(r).

14       Even if the Court could find BNSF performed an individualized assessment

15   of West, West's expert, Dr. Trangle, disagrees with Dr. Aquino's risk assessment

16   of West.  *See* ECF No. 47-3.  Particularly that West posed an unacceptable future

17   risk of sudden incapacitation which Dr. Trangle concluded based on his evaluation

18   of West's work and medical history and his own research on Susac Syndrome.  *Id.*

19   West has presented sufficient evidence that reasonable minds may differ on

20

whether Dr. Aquino's assessment of the direct threat posed by West was objectively reasonable.

West has raised a material issue of fact as to BNSF's direct threat defense, therefore summary judgment as to this issue is **denied**.

### 2. Reasonable Accommodation

West claims BNSF failed to provide reasonable accommodation in violation of the ADA. ECF No. 45 at 9. BNSF contends that BNSF did offer West a reasonable accommodation which West rejected necessarily defeating his claim. In the alternative, BNSF also argues West's limitations on acceptable jobs preclude his reassignment claim and it was not obligated under the ADA to place West in one of the forty-seven positions identified by West. ECF No. 35 at 10-18.

The ADA, 42 U.S.C. § 12112(a), (b)(5)(A), requires that an employer make reasonable accommodations to an employee's disability. "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodation." *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Id.* "The ADA treats the failure to provide a

reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018); *see also* 42 U.S.C. § 12112(b)(5). "The term 'reasonable accommodation' may include . . . reassignment to a vacant position..." 42 U.S.C. § 12111(9)(B).

Only the reasonable accommodation component is in dispute here. West argues BNSF did not engage in a good faith interactive process because it refused to hire West into multiple positions that could have easily accommodated him. ECF No. 45 at 11. It is undisputed that West applied for forty-seven positions within BNSF (ECF Nos. 36 at 18-19, 45 at 13), however, the parties do disagree on the reassignment options West was willing to actually accept and what BNSF's obligations were in offering a position.

i.      BNSF's offered position

BNSF first argues that it did offer West a reassignment opportunity in 2022 which West rejected and such rejection either cut off the interactive process or rendered West no longer a qualified individual under the ADA pursuant to 29 C.F.R. § 1630.9(d). ECF No. 35 at 12-13. Under § 1630.9(d), an individual is not required to accept an accommodation offered by an employer, however, "if such

individual rejects a reasonable accommodation, . . . that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual *will not be considered qualified."*  29 C.F.R. § 1630.9(d) (emphasis added).  BNSF also cites to one unpublished Ninth Circuit case and a previous case before this Court as support.  *See Reza v. Int'l Game Tech.*, 351 F. App'x 188, 190 (9th Cir. 2009); *Vincent v. BNSF Ry. Co.*, No. 10-CV-0347-TOR, 2012 WL 5929954 (E.D. Wash. Nov. 27, 2012).  The position in question was a controller/operator (telegraph) position in Pasco, Washington.  ECF No. 40 at 4-5.

West argues that the position was a significant pay cut and required relocating his family.  ECF No. 45 at 12.  West also alleges BNSF intentionally offered the position after West filed his claim for the purpose that West would reject it, thereby giving BNSF an argument West turned down a reasonable accommodation.  *Id.*  Finally, West argues that an alternative position is not a reasonable accommodation where it does not suit the disabled employee's needs and other positions were available that did involve a significant pay cut that West was open to.  ECF No. 45 at 12-13.  West also cites to only nonbinding authority.  *See Weeks v. Union Pac. R.R. Co.*, 137 F. Supp. 3d 1204, 1223 (E.D. Cal. 2015); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999).

The reasonable accommodation dispute in the previous case before this Court, *Vincent v. BNSF Ry. Co.*, had dissimilar facts and, in part, concerned whether the offered position by BNSF was a reasonable reassignment with essential functions the plaintiff could actually perform with her disability. *Vincent*, 2012 WL 5929954, at *6. However, the Court does find the unpublished Ninth Circuit case, *Reza v. Int'l Game Tech.*, to be somewhat informative. The court there upheld a lower court's summary judgment ruling that the plaintiff was no longer a qualified individual under the ADA after she rejected a reassignment to a position that could meet her needs. The court concluded that the reassignment was a reasonable accommodation because no accommodation was available to permit the plaintiff to perform in her previous role, and "there was no vacant equivalent position to which IGT could reassign" her. *Reza*, 351 F. App'x at 190. This reasoning suggests the Ninth Circuit may find a proposed reassignment to be an unreasonable accommodation where a more equivalent vacant position exists.

At the time BNSF offered West the control operator position, West had also filed an application for a position BNSF later determined West qualified for. ECF No. 36 at 17-18, 24. Thus, West has raised an issue of whether the offered position was a reasonable accommodation in light of other available positions *if* they qualified as a reasonable accommodation as discussed below.

//

ii.    West's applications

BNSF argues West's failure to accommodate claim also fails because it was limited in accommodations it could offer West and was not obligated to offer West any of the positions he applied for.  BNSF alleges West was not interested in a craft transfer, despite applying for positions that required a craft transfer, and his geographical area of interest was limited to Spokane.  ECF No. 35 at 14.  BNSF supports this with West's discussions with BNSF's vocational rehabilitation specialist, Anthony Frazier ("Frazier"), expressing these desires early on in the job searching process (ECF No. 40).  BNSF also provides an email from West's counsel to Frazier stating West was willing to work in another position for BNSF "provided it does not require him to relocate and/or forfeit his seniority."  ECF No. 40-5.  BNSF reasons that this evidence shows West would not have actually accepted any positions he applied for that involved a craft transfer or relocation outside his restricted geographical area of interest, thereby alleviating BNSF's duty to even offer them.

West contends that while early on he did express a desire to relocate to either Spokane or Fort Worth, he became open to relocations elsewhere as evidenced by his applications to positions in other areas.  ECF Nos. 37-1 at 71, 45 at 13.  Additionally, also as evidenced by his applications, West claims he was willing to lose seniority through a craft transfer if the proposed position offered a

similar pay to his position as a locomotive engineer.  ECF No. 37-1 at 65.  West

further argues that regardless of any discussion regarding his work preferences

with BNSF, it did not mean he was not willing to work the positions for which he

applied, and BNSF's refusal to place him in a position for which he was qualified

was a violation of its duty to provide reasonable accommodation.  ECF No. 45 at

13.  The Court finds a genuine issue exists as to whether West would have

accepted a position he qualified for.  Thus, the Court must next address whether

the positions West qualified for amounted to a "reasonable accommodation" under

the ADA.

Of the forty-seven applications, it is undisputed West qualified for four.

ECF Nos. 36 at 24.  However, he was rejected for each, without an interview, for

the following reasons given by BNSF:

- Track Maintenance (Laborer, Truck Driver, Welder) (Bonners Ferry, ID) (81056): The disposition code on Mr. West's Candidate Profile indicates that he had other applications where he was being considered at the same time. When that situation occurs, the recruiting manager does not process the application so as not to interfere with other hiring for other position(s).

- Signal Apprentice (Bonners Ferry, ID) (89610): The disposition code on Mr. West's Candidate Profile indicates that as of the time his application was processed, BNSF was no longer interviewing for that position.

- Signal Apprentice (Spokane, WA) (90052): Mr. West was not eligible for this position because a craft transfer was not permitted for the position. In addition, Mr. West was not the best-qualified candidate for the position.

- <u>Dispatcher Trainee (Ft. Worth, TX) (90091)</u>:
  Mr. West was not the best qualified candidate for this position.

ECF No. 39 at 7-8.

BNSF's employment policy states "BNSF selects the most qualified candidate for an open position, whether the candidates being considered are internal (existing BNSF employees), external, or both." ECF No 39-1 at 1. The parties disagree on whether BNSF was required to offer West a position he qualified for regardless of whether he was the best qualified candidate. Circuits are split on whether reassignment is a reasonable accommodation where it conflicts with an employer's policy of hiring the best qualified candidate. The split stems from the Supreme Court case *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), where the Court held it was not reasonable to require an employer reassign a qualified employee under the ADA to a vacant position in violation of its seniority system.

The Court reasoned that where a proposed accommodation would not be reasonable in the run of cases, it was unreasonable as a matter of law. The Court then held that a proposed accommodation in violation of a seniority policy is ordinarily sufficient as a matter of law that an "accommodation" is not reasonable. *Id.* at 391. The Court in part based its decision on analogous case law recognizing the importance of seniority systems to employee-management relations. *Id.* at 403.

The Court states that whether collectively bargained or unilaterally imposed by management,

> the typical seniority system provides important employee benefits by creating, and fulfilling, employee expectations of fair, uniform treatment. These benefits include "job security and an opportunity for steady and predictable advancement based on objective standards." . . . And they consequently encourage employees to invest in the employing company, accepting "less than their value to the firm early in their careers" in return for greater benefits in later years.

*Id.* at 404.

Since *Barnett*, four circuits have held that an employer's best qualified candidate policy fall under the same principles as the seniority based system reasoning in *Barnett*. *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1016 (4th Cir. 2020) ("In the ordinary 'run of cases,' reassignment in contravention of such a policy would not be reasonable."); *Equal Emp't Opportunity Comm's v. Methodist Hosps. of Dallas*, 62 F.4th 938, 945 (5th Cir. 2023) ("When the lives of patients are on the line, mandatory reassignment in violation of a best-qualified system is unreasonable in the run of cases."); *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 483 (8th Cir. 2007); *Equal Emp't Opportunity Comm's v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1346 (11th Cir. 2016).

However, three other circuits have held the ADA requires reassignment of a qualified individual to a vacant position, regardless of the existence of a best-qualified candidate policy, unless the employer can show undue hardship. *Smith v.*

1   *Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999);  *Equal Emp't Opportunity*

2   *Comm'n v. United Airlines*, 693 F.3d 760, 764-65 (7th Cir. 2012); *Aka v. Wash.*

3   *Hosp. Ctr.*, 156 F.3d 1284, 1304 (D.C. Cir. 1998).  "While employers may prefer

4   to hire the best qualified applicant, the violation of a best-qualified selection policy

5   does not involve the property-rights and administrative concerns (and resulting

6   burdens) presented by violation of a seniority policy."  *United Airlines, Inc.*, 693

7   F.3d at 764.  Thus, equating a best-qualified selection policy to a seniority system

8   so enlarges "the narrow, fact-specific exception set out in *Barnett* as to swallow the

9   rule."  *Id.*

10          The Equal Employment Opportunity Commission, which is charged in part

11   for administering the ADA, also provides guidance on this issue:

12          The ADA specifically lists "reassignment to a vacant position" as a form of
       reasonable accommodation. This type of reasonable accommodation must be
13          provided to an employee who, because of a disability, can no longer perform
       the essential functions of his/her current position, with or without reasonable
14          accommodation, unless the employer can show that it would be an undue
       hardship. An employee must be "qualified" for the new position. . . . The
15          employee does not need to be the best qualified individual for the position in
       order to obtain it as a reassignment.

16

17   EEOC Guidance: Reasonable Accommodation and Undue Hardship Under the

18   Americans With Disabilities Act (2002).

19          The Ninth Circuit has yet to take a position, therefore the Court chooses to

20   align with the latter circuits' reasoning.  As those circuits all agree, reassignment as

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY ~ 21

form a reasonable accommodation would be of little value if it simply permitted an employee to compete for a vacant position. *See Smith*, 180 F.3d at 1170 ("On the contrary, '[n]umerous courts have assumed that the reassignment obligation means something more than treating a disabled employee like any other job applicant.'"). Additionally, the Tenth Circuit addressed BNSF's very argument in *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166 (10th Cir. 2018). "Under BNSF's logic, every employer could adopt a policy in favor of hiring the most qualified candidate such that a disabled employee could never rely on reassignment to establish the existence of a reasonable accommodation for purposes of his prima facie case." *Lincoln*, 900 F.3d at 1206.

BNSF cites to the unpublished case *Gamez-Morales v. Pac. Nw. Renal Servs., LLC*, 304 F. App'x 572 (9th Cir. 2008), as evidence the Ninth Circuit would most likely align with the first group of circuits holding a best qualified candidate policy makes a mandatory reassignment unreasonable. ECF No. 35 at 18. However, as West points out, that case concerned an employer's policy prohibiting transfer of an employee within six months of a disciplinary action. *Gamez-Morales*, 304 F. App'x at 574. Other district courts within the Ninth Circuit have also reached the same conclusion as this Court now does. *See Thornton v. Providence Health Sys.-Oregon*, No. 05-40-KI, 2005 WL 3303944, at

1   *5 (D. Or. Dec. 5, 2005); *Betti v. Kaiser Permanente*, No. CIVS03-2678DFL

2   DAD, 2005 WL 3844212, at *4 (E.D. Cal. July 25, 2005).

3       Here, BNSF and West do not dispute that West was a qualified candidate for

4   at least four of the positions he applied for.  Nor do the parties dispute that West

5   was rejected from at least one of the positions he qualified for due to not being the

6   best qualified candidate (Dispatcher Trainee (Ft. Worth, TX).  The Court finds that

7   BNSF was not permitted to reject West from a position he otherwise was qualified

8   for based on its best qualified candidate policy unless BNSF can show

9   reassignment was either unreasonable in this particular case or would place an

10  undue hardship on BNSF.  *See Barnett*, 535 U.S. at 401-02 (explaining once the

11  plaintiff shows an "accommodation" seems reasonable on its face, "the

12  defendant/employer then must show special circumstances that demonstrate undue

13  hardship in the particular circumstances").  BNSF has not provided support of

14  undue hardship but has raised an issue of whether West participated in the

15  interactive process in bad faith by applying for positions he had no intention of

16  accepting.  Either way a genuine issue exists as to West's failure for reasonable

17  accommodation claim, therefore, summary judgment must be **denied**.

18      *3.  Retaliation Under the FMLA*

19      West brought two claims under the FMLA, retaliation 29 U.S.C. §

20  2615(a)(1) and discrimination, 29 U.S.C. § 2615(a)(2).  Specifically, 29 U.S.C. §

2615(a)(1) states, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  Whereas 29 U.S.C. § 2615(a)(2) states, "It shall be unlawful for any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  BNSF contends West does not allege any facts or argument to support a claim under § 2615(a)(2), therefore making summary judgment appropriate.  ECF No. 35 at 19.  West does not dispute this in his response but rather focuses on a § 2615(a)(1) claim.  ECF No. 45 at 17-18.

While the statutory language of § 2615(a)(2) has caused some confusion among courts as to what type of conduct it prohibits, the Ninth Circuit has clarified "it does not cover visiting negative consequences on an employee simply because he has used FMLA leave.  Such action is, instead, covered under § 2615(a)(1), the provision governing 'Interference [with the] Exercise of rights.'"  *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001) (citation omitted).  Here, West is alleging he suffered an adverse employment action because he took FMLA leave (ECF Nos. 1 at 6, 45 at 17-18), thus, § 2615(a)(2) is not implicated therefore summary judgment is **granted** as to that claim.

To prevail on an interference claim under § 2615(a)(1), West must "prove by a preponderance of the evidence [his] taking of FMLA-protected leave

1    constituted a negative factor in the decision to terminate [him]." *Bachelder*, 259

2    F.3d at 1125.  West may use direct or circumstantial evidence in proving his claim.

3    *Id.*  BNSF argues that Dr. Aquino became aware of West's condition from his

4    FMLA leave application, but that does suggest BNSF held the FMLA leave itself

5    against West.  ECF No. 35 at 21.

6        West's response argument is that he availed himself of a protected FMLA

7    right when he requested FMLA leave, he suffered an adverse employment

8    condition after BNSF removed him from his position, and that decision stemmed

9    from West requesting the leave because he had to divulge his medical information

10   to BNSF to explain why he needed the leave.  ECF No. 45 at 17-18.  What West is

11   actually arguing is that he was removed from his position due to his underlying

12   medical condition, not for taking FMLA leave.  West's attempt to create a causal

13   connection between the FMLA leave itself and the adverse employment decision

14   fails as a result.  West cites to *Lamonaca v. Tread Corp.*, 157 F. Supp. 3d 507

15   (W.D. Va. 2016) in support of his argument but that case is unpersuasive.  The

16   issue there was whether the plaintiff engaged in a protected activity when she

17   requested medical leave, and the defendant terminated her in retaliation of that

18   request.  *Tread*, 157 F. Supp. 3d at 517.

19       Here, BNSF removed West from service after learning of West's medical

20   diagnosis.  ECF 45 at 21.  West provides no evidence that raises a triable issue that

BNSF removed West from his position *because* he exercised his right in requesting FMLA leave.  West's contention that his termination "flowed" from his request for FMLA leave because he divulged his medical condition which was the basis for his removal is insufficient to show a causal connection between both actions.  ECF No. 45 at 17.  Therefore, summary judgment is **granted** as to West's § 2615(a)(1) claim.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Exclude the Expert Opinion Testimony of Dr. Kevin Trangle (ECF No. 41) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 35) is **granted in part** and **denied in part**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED November 1, 2024.



THOMAS O. RICE
United States District Judge